FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 OCT 31 P 1:51

CLERK'S OFFICE
AT BALTIMORE

BY____           DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANK M. NEFF                  *

Plaintiff                      *

v                              *        Civil Action No. RDB-11-582

CMS,[1]                        *
WARDEN and
MEDICAL DEPARTMENT             *

Defendant                      *
                             ***

## MEMORANDUM OPINION

Pending in the above-captioned civil rights case is a Motion to Dismiss or for Summary Judgment filed on behalf of medical Defendant Correctional Medical Services (CMS) and a Motion to Dismiss or for Summary Judgment filed on behalf of correctional Defendant Warden. ECF No. 23 and 31. The self-represented plaintiff, Frank M. Neff ("Neff") was provided notice that he had a right to file a response in opposition to each of the dispositive motions (ECF No. 24 and 32). Neff has filed correspondence which shall be construed as a Response in Opposition to each of the motions. ECF No. 29, 30, 33, and 34. After review of the pleadings, exhibits, and applicable law, the Court determines that a hearing is unwarranted. Local Rule 105.6 (D. Md. 2011). For the reasons that follow, both motions for summary judgment (ECF No. 23 and 31) will be GRANTED and judgment will be ENTERED in favor of Defendants.

### Background

Neff alleges that his family doctor sent copies of his medical records to medical staff at Western Correctional Institution (WCI) where he is confined, informing them about Neff's chronic health problems. ECF No. 1 at p. 4. Neff states the records were sent in 2007 and make

---

[1] Correctional Medical Services, Inc. (CMS) is now known as Corizon, Inc.. ECF No. 23.

clear that he has heart problems, high blood pressure, high cholesterol, and suffered two heart attacks in 1990 and 1993. He claims medical staff at WCI refuse to treat him for his illness and have told him he has to buy his own medication, which he claims violates state and federal law because he makes less than 15 dollars a month. *Id.* and Attachment 1 at pp. 3, 7, and 13.

In addition, he claims that Dr. Shellhouse refused to order medications Neff needs for mental health issues. He states Ms. Graham, Mr. Webber, and Dr. M. Reed diagnosed him with "serious mental health problems." ECF No. 1 at Attachment 1, p. 2. Neff further claims that the medical department at WCI refuses to order his medication refills and when they do it takes a month or more to get the medication. *Id.* Neff states he has a "serious seizure disorder" and when his cell-mate told a correctional officer that Neff had a seizure, the medical department was not called. *Id.* at p. 7.

Defendants allege that there is no indication that Neff suffers from a heart condition, high blood pressure, or high cholesterol. ECF No. 23 at Ex. A. All blood test results have been within normal limits, indicating that Neff did not require any treatment. On one occasion, June 29, 2010, Neff was brought to the medical unit by wheelchair complaining he had experienced chest pain for the previous 30 minutes and that he was suffering with sharp radiating pain down his left arm. The nurse on duty, Sarah Taylor, performed an electrocardiogram (EKG) which showed a normal cardiac rhythm. At that time Neff claimed he had a heart condition, but Taylor noted there was no such diagnosis in his file. Neff's blood pressure was 136/62 and decreased to 122/60 while he was in the medical unit. Taylor notified Dr. Ottey of Neff's symptoms and the EKG results. Based on that information, Ottey ordered a dose of Zantac for Neff and he was returned to his housing unit with instructions to return to medical if his symptoms worsened. *Id.* Since that episode, Neff has not offered any further complaints regarding chest pain. *Id.*

2

Notwithstanding the slightly elevated blood pressure reading on June 29, 2010, Neff's blood pressure averages in the normal range. He does not require treatment for hypertension. *Id.* Neff's cholesterol level is also within normal range and does not require treatment.

The over-the-counter medications provided to Neff include: Milk of Magnesia (laxative); chlorpheniramine maleate (antihistamine); Maalox, Gaviscon and Pepto-Bismal (antacids); analgesic balm (join/muscle pain); Tylenol; Ibuprofen; A&D ointment (dry skin rash); lotion for dry skin; and simethicone (gas relief). ECF No. 23 at Ex. A. Defendants explain that due to a change in policy by the Division of Correction in 2010, over-the-counter medications must be purchased through the commissary. Despite that policy change, Neff is still supplied with Gavison, Ibuprofen, and A&D ointment. *Id.*

Records submitted by medical Defendants indicate that the only serious chronic medical condition from which Neff suffers is a seizure disorder, along with complications from the disorder.[2] Neff is prescribed anit-seizure medication, but is non-compliant with the medication, making his seizure disorder poorly managed. In fact Neff "signed off" on all seizure medications despite counseling discouraging such a decision. ECF No. 23 at Ex. B.

Correctional Defendants assert that they are entitled to rely on the medical judgment of medical staff and claim entitlement to summary judgment based on their lack of direct involvement in Neff's medical care. ECF No. 31. They also assert that Neff has not properly exhausted administrative remedies regarding the claims raised.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

---

[2] Neff was assigned to a single cell due to incontinence, which caused problems with his cell mate. ECF No. 7 at p. 2.

3

is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Medical Defendants

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th

4

Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on

5

precautions actually taken in light of suicide risk, not those that could have been taken).

Neff has failed to establish that he suffers a serious medical condition for which he is not receiving care. Even when Neff's pleadings are liberally construed, he has failed to adequately dispute Defendants' assertions that he does not have the conditions he claimed to have. Rather, Neff simply insists that Defendants have violated federal laws and he threatens that this Court will be charged with obstruction of justice if his Complaint is dismissed. ECF No. 33 and 34. The record evidence establishes that Neff is receiving care for his seizure disorder and members of the medical staff have attempted to work with him to address his concerns, despite his frequent threats of lawsuits. ECF No. 23 at Ex. B. Medical Defendants are entitled to summary judgment in their favor.

## Correctional Defendants

The PLRA provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be

considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md.2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he

"never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Although Neff availed himself of the initial step of filing an Administrative Remedy complaint (ARP) with the Warden, he did not take the subsequent step of appealing to the Commissioner of Correction. He offers no explanation as to why he did not file the appeal. Having failed to come forward with evidence in light of Defendants assertion that he has not exhausted his claims, the Complaint as to correctional Defendants must be dismissed.[3]

A separate Order follows.

October 28, 2011
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[3] The Court also notes that the complaint as it pertains to correctional Defendants is vague and gives no clear indication of the nature of the claims against them.

8